446 So.2d 352 (1984)
STATE of Louisiana
v.
Nola C. BAILEY and Charles Bailey.
STATE of Louisiana
v.
Charles BAILEY.
No. K-1671.
Court of Appeal of Louisiana, Fourth Circuit.
January 19, 1984.
Harry F. Connick, Dist. Atty., Nancy Sharpe, Asst. Dist. Atty., New Orleans, for relator.
Chris Christofferson, Orleans Indigent Defender Program, New Orleans, for respondent.
*353 Before REDMANN, LOBRANO and WARD, JJ.
LOBRANO, Judge.
We granted certiorari to review the grant of a motion to suppress. The basic factual situation of this case is as follows.
On Thursday, September 8, 1983, Narcotics Detective Michael Glasser was informed by a confidential informant, whose reliability had yet to be proven, that Ritalin could be purchased from the occupant of 3114 Alvar Street, Apartment D.
Detective Glasser, Doucette, Mathews and Ortez in an effort to establish the reliability of the information given them, initiated a surveillance of 3114 Alvar Street, during the late afternoon hours of September 8, 1983. The detectives positioned themselves so that they could see anyone who entered or exited 3114 Alvar Street. The building in which 3114 Alvar Street, Apartment D is located, consists of six different municipal numbers, three on each side of the building, each having a separate entrance. At each number there are four apartments, two to each floor, one on either side of the central hall and stair.
At about 10:30 p.m., a negro male, about nineteen years of age, wearing red pants and a blue shirt with stars, walked into that part of the building which houses 3114 Alvar Street. The detectives were able to determine which floor and which apartment the negro male went to by observing the visitor through a partially obscured window located on the second floor of the building. The door of the apartment located on the right side of the window (as observed from the Alvar Street side) opened and then closed. Immediately the lone visitor, previously observed by the detectives, left the apartment building and walked away.
The detectives were unable to determine whether or not an illegal narcotics transaction had occurred because of the restricted visibility afforded them by the partially obscured window of the second floor. At about 10:30 p.m., Detective Roland Mathews climbed the stairs and knocked on the door of the apartment he had seen the negro male visit only moments before. The door opened and the voice of a negro male asked who was there. Detective Mathews answered, "TONY", and requested a Ritalin tablet as he handed a twenty dollar bill to the occupant of the apartment. The occupant extended what appeared to the detective to be the hand of a negro male. The hand contained a tablet of Ritalin and two five dollar bills in change. Detective Mathews took these items and turned to leave. Because Mathews was unable to determine whether the apartment he had just come from was "C" or "D", and in order to cause as little suspicion in his investigation as possible, he went to the apartment building in front of and parallel to the building he had just exited. Detective Mathews found that the apartments on the ground floor of the obviously similar apartment building were lettered "C" on the left side and "D" on the right.
Detective Mathews and the other detectives involved with the investigation returned to the narcotics office where Detective Glasser prepared the search warrant. The search warrant and the affidavit which supports it both specified 3114 Alvar Street, Apartment D, as the address to be searched. The body of the affidavit which accompanied the application for the search warrant went further in its specificity by stating "This visitor entered the building, ascended the stairs and went to the upstairs apartment on the right side (as viewed from the Alvar Street side), Apartment D".
The application for the search warrant, the affidavit which accompanied it and the order for search was submitted to a magistrate and signed at 12:30 a.m., September 9, 1983. The warrant was executed on September 9, 1983, at 1:00 a.m., by Detectives Glasser, Doucette, Mathews and Ortiz, the same detectives who had initially conducted the surveillance and purchase of Ritalin at 3114 Alvar Street, Apartment D. There was never any doubt in the minds of these detectives that they had indeed executed *354 the search warrant on the correct apartment.
The defendant filed a motion to suppress the evidence seized as a result of the execution of that search warrant, and a hearing was held on October 21, 1983 and November 14, 1983. The testimony produced at the hearing clearly shows that the apartment which the officers searched was apartment "C" instead of "D" and the apartment across the hall was in fact apartment "D". As part of the hearing the trial judge visited the apartment building and noted that the apartment that was searched was in fact apartment "C" and not "D". As a result the trial court granted the motion to suppress, and gave as reasons:
"I feel that the face of the warrant in that particular case (referring to State v. Majors [La.App.], 430 So.2d 183) sufficiently described the place to be searched. I do not feel that they did so in this particular matter."
We disagree with the trial court's legal conclusions in this case.
The object of the description in a search warrant is to prevent the search of the wrong premises. If the place to be searched is described in sufficient detail to enable the officers to locate it with reasonable certainty and with the reasonable probability that the police will not search the wrong premises, the description is sufficient. State v. Cobbs, 350 So.2d 168 (La. 1977). However, "... a discrepancy may indeed be fatal to the validity of a search warrant in circumstances where the variance authorizes the search of other premises than those actually searched." State v. Petta, 354 So.2d 563 (La.1978), at 564. A minor error in a portion of the description of the premises to be searched does not invalidate the search. State v. Korman, 379 So.2d 1061 (La.1980).
The trial court in this case erred in concluding that only the face of the warrant is to be considered in determining sufficiency of description. This is incorrect. The jurisprudence is not so strict as to suppress a search warrant simply because of the description (or lack thereof) on the face of the warrant. In State v. Cobbs, supra, the court referred to a diagram prepared by the informant to uphold the warrant. In State v. Hysell, 364 So.2d 1300 (La.1978) the court alluded to the fact that the officers who executed the search warrant were the same ones who obtained the information and prepared the affidavit. The factual circumstances of that case prevented the wrong apartment from being searched.
State v. Smith, 397 So.2d 1326 (La.1981), presented the issue of whether the description in the affidavit could be alluded to as a supplement to the description in the warrant. In that case the court stated:
"Like Manzella [State v. Manzella, La., 392 So.2d 403] the warrant authorized the search of the wrong apartment: 18 21 instead of defendant's 18 19. Unlike Manzella, however, and similar to Hysell, the affidavit contains additional information which makes it clear that the officers observed suspected activity at 18 19 the affidavit indicates the door with the 18 21 column to the left and the picture window to the right. Finally, again like Hysell, the affiants were executing officers. Thus, the description in the warrant was sufficient to insure that the officers who in fact were to search the apartment would not search the wrong apartment." Id. at 1329.

See also, State v. Johnson, 408 So.2d 1280 (La.1982) and State v. Majors, 430 So.2d 183 (La.App. 2nd Cir.1983).
We are convinced that the facts and circumstances of the instant case are such that there was no possibility of the wrong apartment being searched. The application for the search warrant was sworn to by the officers who conducted the surveillance. It described the premises as 3114 Alvar Street, Apartment D. It further identified the subject premises as "... the upstairs apartment on the right (as viewed from Alvar Street Side) Apartment D." Officer Mathews personally went to the door of the apartment to be searched and conducted *355 the drug transaction. His only error[1] was in not noting the correct apartment letter at the time. He assumed that the apartments were lettered in the same fashion as the adjoining building. This erroneous assumption will not invalidate the warrant under the facts of this case.
Furthermore, the executing officers were also the officers who conducted the surveillance and supplied the affidavit to support the warrant. Certainly they knew the apartment to be searched, and the fact that they thought there was a "D" on the door instead of a "C" does not negate the knowledge they acquired during the surveillance.
Accordingly, the ruling of the trial court granting the motion to suppress is hereby vacated and set aside.
NOTES
[1] We refer to the mistake of Officer Mathews as a legal error only as we are certain his actions in not lingering in the building would be considered appropriate police actions.