675 So.2d 266 (1996)
STATE of Louisiana
v.
Denard ALONZO and Kathaleen Jarvis.
No. 95-KK-2483.
Supreme Court of Louisiana.
May 31, 1996.
Rehearing Denied June 28, 1996.
Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Kevin A. Marks, Jack Peebles, New Orleans, for Applicant.
Willie Hudson Turk, Charles Lloyd Elloie, New Orleans, for Respondent.
PER CURIAM:[*]
We granted the state's writ application to consider the trial court's ruling that the police searched one apartment in a multi-unit dwelling under a warrant authorizing the search of another apartment located in the same building and thereby violated the defendants' privacy rights under the Fourth Amendment and La. Const. Art. I, § 5. See State v. Alonzo, 95-1291 (La.App. 4th Cir. 9/15/95), 661 So.2d 1043, writ granted, 95-2483 (La. 1/5/96), 666 So.2d 310.
The search warrant issued on February 2, 1995, for an apartment located in the LaFite Housing project of New Orleans. The rear of the apartment building faces the 600 block of North Tonti; the warrant authorized the search of the second-floor apartment at 654 North Tonti. It further stated that "there is a piece of plywood covering the first window upon entering from the rear and the words `Steve Lil Roni' written on an electrical box below the window." On its face, the warrant thus described the targeted premises with sufficient particularity to preclude a general search of the entire building. See Maryland v. Garrison, 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987) ("By limiting the authorization to search to *267 the specific areas and things for which there is probable cause to search, the requirement [of particularity in the Warrant Clause of the Fourth Amendment] ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.") (footnote omitted).
It also appears from the record that the police did search the apartment they intended to search. According to the affiant, Officer Landries Jackson, he acted upon a tip from a confidential informant that a man known by the street name "Popee" was selling quarter ounces of cocaine from 654 North Tonti. When Jackson executed the warrant, he found both defendants present inside the apartment. According to Jackson, Jarvis turned to Alonzo and asked, "Pappie, you don't have dope in my house?" There is no evidence that the police searched any other apartment in the building.
The trial court found, however, that Jackson's use of the municipal number 654 North Tonti Street, when the apartment actually searched was 660 North Tonti, limited the authority of the warrant and precluded the search of the latter address. The trial judge personally inspected the premises at 600 North Tonti and observed that three of the five doors at the back of the building had municipal numbers. There was a 654 North Tonti, just to the left of the electrical box spray painted with "Steve Lil Roni." Immediately to the right of that electrical box was a door frame without a door. The police had used that entrance to gain access to the second floor apartment searched in this case. To the right of that doorway was another door marked 666 North Tonti.
As a general rule, mistakes in the use of municipal numbers do not invalidate a search warrant which otherwise describes the premises with sufficient particularity such that the officer with the warrant "can with reasonable effort ascertain and identify the place intended." Steele v. United States, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925); Garrison, 480 U.S. at 88-89, 107 S.Ct. at 1019 (citing Steele); State v. Scramuzza, 408 So.2d 1316, 1317-18 (La. 1982); State v. Korman, 379 So.2d 1061, 1063 (La.1980); see also 2 Wayne R. LaFave, Search and Seizure, § 4.5(a) at 522 (3d ed. 1996) ("[T]he cases reflect an understanding of the fact that errors can easily occur in the use of numbers, such as an apartment or house number, and that it should be presumed that such an error did occur when other descriptive facts fit a different location.")
According to Officer Jackson, he used the municipal number 654 North Tonti in his application because his confidential informant had given him that number. The officer then attempted to confirm the number by walking some two and a half blocks around the building to the front of the building and counting the doors. Jackson assumed that his informant had derived the municipal number in the same way. The officer did not account for the presence of municipal numbers on the back of the building, although he had conducted an intermittent surveillance of the building from the back driveway for at least two days. To confirm his informant's tip, Jackson had also used a second informant to conduct a controlled purchase from the targeted premises. Describing that operation in his warrant application, Jackson again used the municipal number of 654 North Tonti.
Despite the confusion over the use of an incorrect municipal number in Jackson's application and on the face of the warrant, the discrepancy did not invalidate the subsequent search. Photographs taken on the night of the search and introduced at the hearing on the motion to suppress show the second story apartment searched by Jackson and ATF agents exactly as the officer described it in his application. Any police officer could have resolved the discrepancy created by the use of the incorrect municipal number and ascertained the targeted premises with reasonable certainty. In this case, Jackson's presence during the execution of the warrant offered additional assurances that only the targeted premises and not any other apartment would be searched. Scramuzza, 408 So.2d at 1318 ("[T]he officers who conducted the surveillance were the same officers who were to (and did) conduct the search ... [and] there *268 was little likelihood that the officers would search the wrong premises.") (citing United States v. Darensbourg, 520 F.2d 985 (5th Cir.1975)); Korman, 379 So.2d at 1063 (despite a mistake in municipal number, when the surveilling officer also executed the warrant "there was little possibility that an apartment not intended to be searched could have been searched through mistakeas indeed it was not.")
The trial court's judgment granting the defendants' motion to suppress is therefore reversed and this case is remanded to the district court for further proceedings.
JUDGMENT VACATED; CASE REMANDED.
NOTES
[*] Lemmon, J., not on panel. See Rule IV, Part 2, § 3.